**MINNEAPOLIS STAR AND TRIBUNE COMPANY, La Crosse Tribune Company, and Northwest Publications, Inc., Petitioners,**

v.

**Honorable Robert E. LEE Judge of County Court for Houston County, Respondent.**

**No. C6–84–1436.**

Court of Appeals of Minnesota.

Aug. 14, 1984.

Patricia A. Hirl, Minneapolis, for petitioners.

Paul R. Hannah, St. Paul, for Northwest Publications, Inc.

Robert E. Lee, pro se.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and WOZNIAK, JJ.

POPOVICH, Chief Judge.

## FACTS

The petitioners request a writ of prohibition. In June 1984, the trial court issued an order that all parties in what was presumably a juvenile dependency case cease and desist from publishing letters or statements having to do with the proceeding. Subsequently, the minor's parents wrote two letters to the editor of a newspaper in the area. On July 27, 1984, the trial court, believing the letters to be a violation of its order, ordered a contempt hearing. At the hearing, held August 8, the trial judge orally ordered:

> I am sure that everyone here is aware of what I said when the hearing started. I will repeat. Even though this is not a juvenile court matter, it involves juvenile issues. It involves a delicate juvenile case that is still pending that is within the jurisdiction of this court. I can't stop people from talking about it but I am going to order that nothing be printed that has any reference to any of the juveniles involved or the juvenile involved or any of the issues that have been raised as a result of this proceeding.

At oral argument, the trial judge said he intended the order to apply to all members of the press, whether present at the hearing or not, and said he ordered it out of concern for the child's welfare.

## ISSUE

May a court issue an order forbidding publication of information about a juvenile case obtained from involved parties and at the contempt hearing which was open to the public?

## ANALYSIS

1. Before a writ of prohibition is issued, three elements are required: (1) an exercise of judicial or quasi-judicial authority, (2) which is unauthorized by law, and (3) causes harm for which there is no adequate remedy at law. *State v. Hartman*, 261 Minn. 314, 323, 112 N.W.2d 340, 364 (1961); *Hancock-Nelson Mercantile Co. v. Weisman*, 340 N.W.2d 866, 868 (Minn.Ct.App. 1983). All elements are present here. A gag order is an act of judicial authority.

2. Petitioners claim the judicial act is unlawful because it is unconstitutional. A gag order seeks to prevent publication before it happens and is, therefore, a prior restraint of speech.

Prior restraints of speech have long been deemed unconstitutional except in the most drastic of situations. *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 51

S.Ct. 625, 75 L.Ed. 1357 (1931). In *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the United States Supreme Court said:

"Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963); *see also Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The Government "thus carries a heavy burden of showing justification for the imposition of such a restraint." * * *

■ Such a restraint must be "necessitated by a compelling governmental interest, and * * * narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982).

■ In most instances, the compelling governmental interest to be served is a threat to a defendant's constitutional right to a fair trial by adverse publicity. *See, e.g., Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). While nothing proscribes the press from reporting events that transpire in the courtroom, judges can control the situation through indirect means such as continuances, change of venue, gag orders to participants, restraining the media in the courtroom, or sequestering the jury. *Id.* at 361–63, 86 S.Ct. at 1521–22. Even when constitutional rights clash, however, a direct blanket gag order on the press is impermissible. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 561, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976).

■ 3. In this case, the governmental interest is not constitutional but statutory: privacy in a juvenile proceeding. It is an important and substantial government interest, but also with limits.

In *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977), an 11-year-old boy was charged in Oklahoma with murder. The press was allowed into a pretrial hearing and learned the boy's name and later took his picture as he was escorted from the courthouse. The hearing could have been closed under Oklahoma law. The trial court then ordered the press not to publish either the boy's name or his picture. The United States Supreme Court overturned the trial court because the information was "publicly revealed in connection with the prosecution of the crime * * *." *Id.* at 311, 97 S.Ct. at 1047.

4. In a later opinion, the United States Supreme Court reviewed several landmark clashes between the court and the press, including *Oklahoma Publishing*. The court summarized those cases, noting:

all suggest strongly that if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.

*Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). "A free press," the Court concluded, "cannot be made to rely solely upon the sufferance of government to supply it with information." *Id.*

■ 5. In this case, there has been no showing of any illegality; the trial court simply wanted to stop people from reading about the case. He said he wanted to protect the child and have a better relationship between Houston County Social Services and the parties. Such an interest does not rise to the level required to justify a prior restraint. The order violated a fundamental constitutional right. Although the court's motives were honorable, nonetheless it was a violation of a fundamental right. There is no adequate remedy at law to redress such a violation and, therefore, the writ must issue.

## DECISION

The trial court's order was an unconstitutional prior restraint of speech. It is hereby vacated.

The writ of prohibition is granted.